UNITED STATES DISTRICT COURT c
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| CLAUDE R. FRAZIER,<br>Plaintiff | CIVIL ACTION NO. 1:13-CV-03110;<br>SEC. P |
| VERSUS | JUDGE WALTER |
| TIMOTHY KEITH, ET AL.,<br>Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

## REPORT AND RECOMMENDATION

On November 18, 2013 *pro se* prisoner Claude R. Frazier ("Frazier") filed a complaint against Warden Tim Keith, Mark Singleton, Daniel Marr, Corrections Corporation of America, James LeBlanc,[1] Stephen Kuplesky, and Amy Brunson. (Doc. 1). Frazier is a paraplegic. In his Complaint, Frazier alleged that Defendants denied him a safe and secure shower area, including a safe shower chair, and an air mattress. (Id.) Additionally, Frazier alleges that he is being deprived of adequate care, resulting in his contraction of bed sores and other illnesses. (Id.). Frazier seeks monetary relief and injunctive relief in the form of an order directing Defendants to provide him with a medically-ordered soft mattress, a secured shower chair, and access to an outside medical professional for proper diagnosis and treatment for his injuries from a fall in the shower, decubitus ulcers, and other related problems. (Id.).

---

[1] Although named in his complaint, Frazier did not provide factual allegations involving Defendants Corrections Corporation of America or James LeBlanc. Therefore, service of process was withheld from those two Defendants. Frazier was not entitled to have his grievances investigated or resolved, nor are grievance procedures required. Frazier had the opportunity to amend his Complaint to state allegations of personal involvement by Defendants LeBlanc or the implementation of unconstitutional policies by CCA. (See Doc. 11). Frazier did not do so.

In their Motion for Summary Judgment, Defendants contend that Frazier did receive medical care after he fell in the shower, and that Frazier was being actively treated for decubitus ulcers at WCC. Furthermore, Defendants state that two physicians determined that an air mattress would not be therapeutic for Frazier. Defendants submitted affidavits[2] and medical records[3] with their Motion for Summary Judgment. (Doc. 75). Frazier submitted an Opposition to Defendants Motion for Summary Judgment. (Doc. 77). Frazier then submitted a Cross-Motion for Summary Judgment. (Doc. 79) to which Defendants responded (Doc. 84) and Frazier replied (Doc. 89).

Defendants Motion for Summary Judgment (Doc. 75) and Frazier's Cross-Motion for Summary Judgment (Doc. 79) are now before the Court for disposition.

I. Background

Frazier is incarcerated at WCC and is paralyzed from the chest down. He is confined to a wheelchair. (Doc. 75-3). On April 4, 2013, Frazier fell out of a shower chair and was assessed by medical staff. (Id.). Frazier stated that Defendant Kupleskly deliberately refused to provide Frazier with proper diagnosis and treatment for his injuries, and that Defendants Keith and Kuplesky were aware of dangerous conditions posed by an unsecured shower chair provided to paraplegics.

---

[2] WCC had recently been taken over by LaSalle Corrections and did not have a Notary Public on staff. Due to flooding in north Louisiana, including both Natchitoches and Winn Parishes, at the time the Motion for Summary Judgment was filed, the affidavits were not able to be notarized in time for the Motion for Summary Judgment to be filed. The signed but nonnotarized affidavits were attached. The notarized affidavits were filed later with leave of court. (See Docs. 75, 80, 81).

[3] Plaintiff's medical records from WCC, Winn Parish Medical Center, and LSU Medical Center were previously filed under seal, and were referred to by page number as if attached and incorporated within the Motion for Summary Judgment.

From January 2013 to the end of 2014, Frazier was hospitalized numerous times for medical issues such as urosepsis, dehydration, and a low hemoglobin count, as well as ensuing complications common among paraplegics, such as renal stones, neurogenic bladder disorder, and delayed healing decubitus. (Doc. 75-4). Frazier further stated that he needs a soft mattress and that one had been prescribed mattress for him, but that he had been denied the mattress by prison staff resulting in pain and suffering related to his bed sores and muscle related problems.

II. Law and Analysis

    A. Standards governing the Motion for Summary Judgment.

Federal Rule of Civil Procedure 56 mandates that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Furthermore, "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c).

"Summary judgment is appropriate only if 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' when

3

viewed in the light most favorable to the non-movant, 'show that there is no genuine issue as to any material fact.'" TIG Ins. Co. v. Sedgwick James of Washington, 276 F.3d 754, 759 (5th Cir. 2002) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id. (citation omitted). If the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause, the non-movant must come forward with 'specific facts' showing a genuine factual issue for trial." Id. (citations omitted).

The non-moving party must rely upon more than mere allegations in its pleadings to show a genuine issue for trial. S.E.C. v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1993). "If the record as a whole could not lead a rational trier of fact to find for the nonmovant, then there is no genuine issue for trial." Vera v. Tue, 73 F.3d 604, 607 (5th Cir. 1996).

B. Deliberate Indifference

Frazier is a convicted inmate. Therefore, his claim for inadequate medical care is analyzed under the Eighth Amendment's prohibition against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To prevail, a plaintiff must establish that the response to a prisoner's medical needs was sufficiently harmful to evidence deliberate indifference. See id.

Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind. See Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir. 1997). It occurs when a prison official subjectively knows of and

disregards a substantial risk to the inmate's health or safety. Farmer v. Brennan, 511 U.S. 825, 837-40 (1994). Furthermore, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." Thompson v. Upshur County, Tx., 245 F.3d 447, 459 (5th Cir. 2001).

The Court must balance the needs of prisoners against the needs of the penal institution in light of medical necessity, not desirability. Woodall v. Foti, 648 F.2d 268, 272 (5th Cir. 1981). The fact a plaintiff does not believe his medical treatment is as good as it should be is not a cognizable complaint. Prisoners are not constitutionally entitled to the best medical care that money can buy. See Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992). A disagreement with the medical treatment does not state a constitutional claim for indifference to medical needs. Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997); see also Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991).

### 1. Defendants were not deliberately indifferent to Frazier's medical needs following the claim of injury after falling out of a shower chair.

Frazier contends that on March 4, 2013,[4] he was injured when he fell out of an unsecured shower chair, resulting in injuries to his upper body and head. Frazier alleges that he was denied proper diagnosis and treatment by medical staff.

Frazier complained of upper back pain as a result of the fall in the shower and was assessed and treated by Ronald Wyatt, RN. (WCC 3.194-195)[5]. The medical

---

[4] In his complaint, Plaintiff states that the fall occurred on March 4, 2013. However, medical records and the exhibits Plaintiff attaches to his Complaint indicate that the fall occurred on April 4, 2013.
[5] References to WCC indicate the medical records from Winn Correctional Center found in Doc. 28.

5

records note that Frazier had no loss of consciousness and that he denied hitting his head. (Id.). Furthermore, Frazier was awake, alert, and oriented during the exam. (Id.) Frazier was provided 200mg of Motrin and released back to his unit. (Id.).

The next time Frazier complains of pain following his fall was on April 28, 2013, when Frazier submitted a sick call. It stated that since his fall, his back had been hurting. (WCC 3.189). He was seen by medical staff on April 30, 2013. (Id.). Medical staff evaluated Frazier and indicated that no deformities were found, and that Frazier would be referred to the medical doctor. (WCC 3.190-191). Dr. Kuplesky reviewed the sick call and made no recommendations. (Id.).

Frazier fell in the shower a second time approximately a month and a half after the first fall. On the morning of May 19, 2013, notes made by Matthew Long, LPN ("Long") indicated that Frazier stated he had fallen out of the wheelchair in the shower when he was attempting to wet a towel and fell forward. (WCC 3.433). Long examined Frazier and noted no visible external injuries, and no loss of consciousness, but that Frazier complained of a headache, noting it was a 6/10 on the pain scale. (Id.). Frazier was given Tylenol and instructed to call for assistance if needed, and to report any new pain or confusion to medical staff. (WCC 3.433, 3.434, 3.435, 3.450).

That evening, Frazier complained of neck pain related to the fall. (WCC 3.436). Long evaluated Frazier and noted that there was a normal range of motion and that Frazier would be monitored for changes. (Id.). Frazier was also told to call for assistance when needed to prevent falls. (Id.). Later that evening, medical notes state that Frazier was observed playing chess with another inmate "laughing and nodding

6

head" and a normal range of motion was noted. "When nurse enters ward, [Frazier] begins to complain of neck pain and stops smiling." (WCC 3.436). Nursing staff made further notes in the next few days regarding Frazier's injury, with no complaints of pain and no abnormality noted during exam, barring a complaint of a headache on May 21, 2013 for which he was given Tylenol. (WCC 3.432, 3.436).

Frazier presents no evidence that Defendants actually knew of and disagreed an excessive risk to Frazier's health. Frazier has not provided any evidence showing that Defendants knew he had a serious medical need following his fall and refused to treat that need. Both times, Frazier was examined by medical personnel following the incidents where he fell out of the shower chair. When Frazier submitted a sick call or medical staff otherwise inquired into his condition, the medical records reflect that medical staff was responsive. The fact that Frazier disagrees with the extent of the treatment given or found it to be ineffective does not prove deliberate indifference to a serious medical need. Bowen v. Quarterman, 339 Fed. Appx. 479, 481 (5th Cir. 2009) (unpublished).

2. **Defendants' were not deliberately indifferent to Frazier's medical needs by refusing to provide Frazier an air mattress.**

Frazier contends that he was prescribed a soft mattress in August 2013 and again in October 2013 but was denied the mattress by prison staff, resulting in pain and suffering related to his bed sores and muscle problems. Frazier states that he had to have a few surgeries performed by outside health care providers due to infections related to decubitus ulcers and/or other physical ailments related to a

7

paraplegic sleeping on a regular prison mattress. (Doc. 79). Frazier claims he was denied a soft mattress due to racial discrimination.

During a hospitalization at LSU in June 2011 for a urinary tract infection, Frazier had been given a disposable air mattress. (Doc. 75-3, p. 2)[6]. The LSU physicians did not issue a prescription for an air mattress, nor was an air mattress referred to in a discharge plan. (WCC 2.602-603). However, WCC issued a pass for Frazier to allow him to take the disposable air mattress into the general population dormitories. (Doc. 75, Exh. A; WCC 1.378, 2.300). Additionally, according to Frazier, the mattress was a "throw away mattress" and "only lasts for so long." (Doc. 30).

Frazier was examined by Dr. Kuplesky on May 24, 2013. Dr. Kuplesky's notes indicate that Frazier had requested an air mattress, but it was determined that it would not be therapeutic since: "1. previous attempt to utilize air mattress unsuccessful; 2. Inmate seating position make mattress impractical; 3. With proper would care and Inmate co-operation, decubiti should heal." (WCC 4.111).

Frazier was then evaluated on July 23, 2013 by Dr. Singleton in relation to the left decubitus ulcer. (WCC 4.111). At that time, Dr. Singleton also considered Frazier's request for an air mattress. (Id.). Dr. Singleton indicated that Frazier had one mattress which broke, and that the ward nurse stated that he had been in the ward twice for an extended period and Frazier's ulcer had healed, but that he won't stay out of his wheelchair which causes the decubitus to return. (Id.). Dr. Singleton

---

[6] Although Defendants' Motion for Summary Judgment states in note 8 it was a June 2013 hospitalization (and Plaintiff's Opposition cites to that particular statement in the Statement of Undisputed Facts), the medical records clearly indicate that it was a June 2011 hospitalization.

further indicates that Fraizer was informed by him and Nurse Brunson that an air mattress would not help Frazier; rather, "movement and not sitting in a [wheelchair] for extended periods will." (WCC 4.111). In an inmate request dated August 6, 2013, Frazier again requested an air mattress in order to prevent and treat bed sores. In response, a staff member indicated that Frazier had been evaluated and an air mattress would not be issued, and that Frazier had been educated on the prevention of bed sores. (Doc. 1-2; WCC. 3.171).

Frazier stated that he was issued a prescription to be provided an air mattress to prevent pressure wounds for which he was under treatment and care. (Doc. 79). On August 9, 2013, during a visit the LSU Urology Clinic for a follow-up and monitoring of a left lower pole stone, Frazier was given a prescription that stated "[p]lease provide patient with air mattress to prevent pressure wounds." (WCC 3.333). However, Frazier was not provided with the prescribed mattress.

Defendants argue that Frazier was not at the Urology Clinic to be treated for the decubitus and that two other physicians had evaluated Frazier regarding the need for an air mattress and determined that it would not be therapeutic and would not help treat Frazier's decubitus ulcer. (See Doc. 75-4; WCC. 4.111). Medical records support the fact that Frazier was being treated at the Urology Clinic, and no mention of Frazier's decubitus ulcer, other than that found in the prescription, was made. (WCC, 3.321-327)

On August 28, 2013, Frazier submitted a sick call request stating that he had been sleeping on his sides to avoid putting pressure on his bed sore resulting in his

9

sides hurting and being unable to sleep. He requested a new mattress. That request was denied by medical staff, noting that Medical Director Daniel Marr ("Marr") had been spoken to and no mattress would be issued. (WCC 3.179).

Additionally, in his Complaint, Frazier indicates that on October 20, 2013, he was taken to Winn Parish Medical Center for pain and fever. He states that on October 26, 2013, he had emergency surgery and was again ordered a soft mattress, but that WCC staff refused to comply with that order, and that the failure to previously provide him the soft mattress resulted in the surgery. (Doc. 1). However, Frazier was admitted to Winn Parish Medical Center with diagnoses of a UTI and urosepsis, and discharged with similar diagnoses. No prescription or other recommendation for a soft mattress was found after reviewing the medical records from that hospital stay. (WPMC 348 (discharge summary); 357 (discharge instructions for wound care); see generally 281-357)[7]. In the Motions for Summary Judgement, however, Frazier does not refer again to that allegation, nor does he cite to evidence in the record for this claim.

On November 23, 2013, Frazier put in a sick call stating his back and ribs hurt while using the mattress. (WCC 3.157). Frazier was examined and it was noted that Frazier's skin was not tender to touch, no edema noted, the skin was intact, and no bruising was noted. (WCC 3.157-159). The current plan of care was continued. (Id.).

On December 10, 2013, Frazier put in a sick call request regarding a potential fever, blood in his catheter bag, and potential kidney pain in his back. He was referred

---

[7] WPMC indicates the Winn Parish Medical Center records found in Doc. 38.

for an exam. (WCC 3.154-156). Frazier was instructed to elevate his extremities to reduce edema, and a pass was issued for 3 mattresses. (WCC 3.156).

In mid-February 2014, Frazier was admitted to LSU for treatment of his decubitus ulcer, a fever, urosepsis, and osteomyelitis. (LSU 275-281)[8]. He told medical staff that approximately three days before admittance, he started having fever, decreased appetite, and chills. (LSU 273). Frazier additionally stated that prison nurses monitored his temperature, and that nurses had begun placing "meat salts"[9] on his wound 3-4 days prior to admittance. (LSU 273). Frazier was sent back to prison with instructions on wound care to include dressing changes and application of medication. (LSU 275). However, no instruction or prescription was given for a different mattress. (Id.).

Following discharge, Plaintiff was in WCC's infirmary. Marr provided Frazier with an air mattress — that mattress had not been prescribed by a physician inside or outside the facility. Frazier refused the air mattress. Marr indicated that Frazier refused the air mattress because it was "not comfortable" (Doc. 75-4, WCC 4.273-274) while Frazier contends he refused it because it was inoperable (Doc. 79).

Frazier was seen at the LSU surgery clinic for incision, drainage, and debridement of a right trochanteric hip ulcer on March 27, 2014. (WCC 4.123, LSU 864-866). Upon discharge from the WCC infirmary, Frazier was instructed on the need to have dressing changes done and that if the wound deteriorated, he would be

---

[8] References to LSU indicate medical records found in Doc. 72.

[9] "Meat salts" likely refers to mesalt, a dressing applied to Frazier's ulcer. (See WCC 4.53).

immediately admitted back in the ward. (WCC 4.227). Further notations by an LSU physician during visits to the Urology Clinic indicate that Frazier's "chronic wounds continue to heal under the direction of plastic surgery." (LSU 962-65, 977). Additionally, on September 25, 2015, a wound check found that "[Frazier's] wound has healed in the interim, and he denies any pain at the site. He does not have any other complaints today." (LSU 1028). Another physician noted that "right trochanter decub well healed with depigmented skin present." (LSU 1030).

Frazier states that he was eventually provided with the air mattress initially provided to another paraplegic at WCC who no longer resides there, and that he has not developed any more decubitus ulcers requiring hospitalization and surgery. (Doc. 79).

Based on the medical records, both from WCC and outside providers, Frazier has extensive medical problems which frequently require treatment both inside and outside the prison facility. However, there is no evidence that Defendants wantonly disregarded Frazier's medical needs. Rather, Defendants appear to have made a medical judgment that Frazier's medical status did not require the use of an air mattress. The medical records and affidavits indicate that Defendants assessed Frazier's request for an air mattress, and found that an air mattress would not be therapeutic for Frazier's bed sores. Furthermore, medical records indicate that Frazier received consistent medical care for his decubitus ulcers and other medical issues. Medical judgments like the ones Defendants made during the course of Frazier's treatment do not rise to the level of deliberate indifference.

C. <u>Warden Tim Keith was not deliberately indifferent to Frazier's medical needs.</u>

In his Complaint, Frazier made allegations against Warden Tim Keith ("Keith") regarding a shower chair and failing to timely respond to his Administrative Remedy Procedure in a timely manner. The parties did not brief the shower issues and, as noted previously, Frazier was not entitled to have his grievances investigated or resolved. Other than those specific references, he makes a general allegation that all defendants are liable for the above acts, which include the deliberate indifference claims discussed above.

Keith is not a medical professional. (Docs. 75-5). Frazier has not offered any evidence that he played any role in Frazier's medical treatment, or was otherwise involved in the circumstances leading to Frazier's deliberate indifference claims. Therefore, Frazier has failed to submit competent evidence raising a genuine dispute as to any material fact regarding whether Keith denied him treatment or otherwise intentionally ignored his medical complaints. <u>See</u> <u>Lee v. Rushing</u>, 530 Fed.Appx. 315, 317-18 (5th Cir. 2013). Medical records indicate that Frazier received medical care when requested, and received follow-up as needed.

D. <u>Frazier's Motion for Summary Judgment</u>

Frazier filed a Cross-Motion for Summary Judgment on April 6, 2016. (Doc. 78). Frazier reiterates his complaints that Defendants are liable for their refusal to provide him with an air mattress that resulted in pain and discomfort and increased the risk of developing decuibitus ulcers. Frazier cites to a ward nurses note which indicates that the nurse had checked the left decubitus ulcer, and that he has been

in the ward twice for an extended period. However, the nurse additionally notes that Frazer's refusal to stay out of the wheelchair causes the decubitus to return.

Additionally, Frazier states that Defendants Kuplesky and Singleton relied upon biased reports from the nurses via sick call procedures who did not conduct a physical examination and which does not reflect what he told them in regards to his medical complaints. He footnotes his allegation with a comment to "[s]ee Exhibits filed by defendants in support of their summary judgment motion." However, his citation does not support his allegation that the nurses report reflected something different than the complaints he made in his sick call.

Following both Defendants' and Frazier's Motions for Summary Judgment, the Court issued a Memorandum Order allowing Frazier to supplement his complaint regarding Frazier's allegations regarding the shower and shower chair. The parties were given additional time to file an additional Motion for Summary Judgment pertaining to those issues. As such, the Court will not address those issues at this time.

III. Conclusion

Based on the foregoing, IT IS RECOMMENDED that Defendants' Motion for Summary Judgment (Doc. 75) be GRANTED, that Frazier's Motion for Summary Judgment (Doc. 78) be DENIED, and that Plaintiff's claims against Defendants' under 42 U.S.C. § 1983 for alleged violations of the Eighth Amendment be DISMISSED.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this \_\_8th\_\_ day of September, 2016.

Joseph H.L. Perez-Montes
United States Magistrate Judge